UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AMERICAN KITCHEN DELIGHTS, INC.,

    Plaintiff,

    v.

JOHN SOULES FOODS, INC., and SEAFAX, INC.,

    Defendants.

No. 14 CV 646

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

American Kitchen Delights, Inc. is a food manufacturer and private-label packager. Its meat supplier, John Soules Foods, Inc., refused to sell American Kitchen meat on credit. John Soules relied, at least in part, on negative credit reports concerning American Kitchen. Those reports were produced by Seafax, Inc. American Kitchen brought this suit, alleging that Seafax's reports were defamatory and disparaging, and that John Soules's decision to deny credit was based on the ethnicity of American Kitchen's owner.[1] Both defendants move to dismiss. For the reasons discussed below, the motions to dismiss are granted.

---

[1] This court has subject-matter jurisdiction. The claim against John Soules arises under a federal statute—the Equal Credit Opportunity Act. The parties are also of diverse citizenship and the amount in controversy exceeds $75,000. [1] ¶¶ 2–3. For the defamation and commercial disparagement claims, Illinois law applies, because American Kitchen is based in Illinois and allegedly suffered its injury in Illinois. *See Kamelgard v. Macura*, 585 F.3d 334, 341–44 (7th Cir. 2009) (in defamation case, place of plaintiff's injury generally controls the "most significant relationship" test for choice-of-law purposes).

I. **Legal Standards**

Defendants' motions are brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure. I therefore construe the complaint in the light most favorable to American Kitchen, accept as true all well-pleaded facts, and draw reasonable inferences in its favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). Statements of law, however, need not be accepted as true. *Id*. Rule 12(b)(6) limits my consideration to "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

To survive defendants' motions, the complaint must "state a claim to relief that is plausible on its face." *Yeftich*, 722 F.3d at 915 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

II. **Facts**[2]

American Kitchen is a food manufacturer and private-label packager. Complaint ¶ 1. American Kitchen's owner, Shahnawaz Hasan, is of Indian descent. Complaint ¶ I.30. Around September 2008, American Kitchen contacted John Soules about buying meat. Complaint ¶ 6. Hasan asked to buy the meat on credit.

---

[2] The facts are taken from the complaint [1], which is cited as "Complaint."

Complaint ¶ 7. John Soules required American Kitchen to submit a credit application. Complaint ¶ 8. John Soules said it would obtain and review American Kitchen's credit report from Seafax, to determine whether to sell meat on credit. Complaint ¶ 9. After doing so, John Soules refused to sell on credit, saying that its decision was based on negative information in the Seafax report. Complaint ¶¶ 10–11. Hasan told John Soules that any negative credit information was erroneous. Complaint ¶ 12. Allegedly, John Soules promised to sell on credit after American Kitchen paid "cash on delivery" for three to six months. Complaint ¶¶ 10–11.

American Kitchen paid "cash on delivery" for three to six months, and then again requested credit. Complaint ¶ 13. John Soules again reviewed a Seafax report and determined that American Kitchen was not creditworthy. Complaint ¶¶ 14–15. John Soules again said that the report contained negative information, and Hasan again said that any such information was erroneous. Complaint ¶¶ 16–17. Nonetheless, John Soules refused to sell on credit, saying its decision was based on the Seafax report. Complaint ¶ 16. Moreover, John Soules stopped accepting "cash on delivery" from American Kitchen, and instead required prepayment two weeks before delivery. Complaint ¶ 16. Hasan tried to learn what negative information was in the Seafax report, but Seafax would not tell him. Complaint ¶ 18. Hasan therefore asked John Soules to use a different credit reporting firm, but John Soules refused. Complaint ¶¶ 19–20. John Soules said that it would consider selling on credit after American Kitchen prepaid for two years. Complaint ¶ 21.

American Kitchen prepaid for two years, and then again requested credit. Complaint ¶ 22. John Soules again refused, saying that American Kitchen's Seafax report was unacceptable. Complaint ¶ 23. Hasan again said that any negative information was erroneous, and again asked John Soules to use a different reporting firm, but John Soules refused. Complaint ¶¶ 24–25. John Soules did, however, agree to consider selling on credit based on financial documents that Hasan turned over directly to John Soules. Complaint ¶¶ 26–27. American Kitchen alleges that, based on that financial information, John Soules should have agreed to sell on credit, but didn't. Complaint ¶ 28.

American Kitchen alleges that other customers with similar (or worse) creditworthiness are receiving credit from John Soules. Complaint ¶¶ 1, I.33. American Kitchen also alleges that John Soules knew that Hasan is Indian. Complaint ¶ I.32.

As noted above, American Kitchen alleges that the information Seafax provided was erroneous. Specifically, American Kitchen alleges that Seafax provided the following "false and negative credit information":

- American Kitchen's bank reports a heavily utilized line of credit;
- American Kitchen has "slowpays";
- American Kitchen has unsolicited references providing negative, slowpay reports; and
- 15 unsolicited trade references, some of which are marked as slowpay.

Complaint ¶¶ II.31, III.31. American Kitchen also alleges that certain negative reports were "duplicated" in Seafax's report. Complaint ¶¶ II.31, III.31. As a result

4

of all the above, American Kitchen's "PayScore"—its overall Seafax credit rating—was lower than it should have been. Complaint ¶¶ II.31, III.31. American Kitchen asked Seafax to correct the errors, but Seafax refused. Complaint ¶¶ II.33, III.33.

## III. Seafax's Motion to Dismiss

### A. The Claims Against Seafax are Time-barred.

The claims against Seafax—for defamation and commercial disparagement—are subject to a one-year statute of limitations. 735 ILL. COMP. STAT. 5/13-201. The limitations clock started running when the allegedly defamatory or disparaging material was published. *Bryson v. News Am. Publ'ns, Inc.*, 174 Ill.2d 77, 105 (1996); *Moore v. PETA, Inc.*, 402 Ill.App.3d 62, 73 (1st Dist. 2010). American Kitchen filed its complaint on January 29, 2014, so claims stemming from material published prior to January 29, 2013 are time-barred.[3]

The first credit denial took place in September 2008. Complaint ¶¶ 6–12. A second incident occurred after American Kitchen paid "cash on delivery" for three to six months. Complaint ¶¶ 13–21. A further incident occurred after American Kitchen prepaid for two years. Complaint ¶¶ 22–28. That takes us to March 2011, very roughly. Even construing the complaint in the light most favorable to

---

[3] "A statute of limitations provides an affirmative defense, and a plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses. But when a plaintiff's complaint nonetheless sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012); *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir 2009) (stating the same rule and stating parenthetically that "[t]echnically, one might see this as a motion for judgment on the pleadings under Rule 12(c) rather than a motion under Rule 12(b)(6), but the practical effect is the same.").

5

American Kitchen and granting it reasonable inferences, these incidents stop well short of January 29, 2013.[4]

The only relevant allegation falling within the limitations period is the conclusory allegation that Seafax's defamatory and disparaging publications continued "[f]rom September 2008 by and through June 2013 . . . ." Complaint ¶ II.30 (repeated at ¶ III.30). That is insufficient. In *Moore v. PETA*, the Illinois Appellate Court upheld the finding that a defendant's allegedly defamatory statement occurred more than one year prior to the complaint being filed. 402 Ill.App.3d at 73. Though the plaintiff alleged that the defendant repeated the statement during the limitations period, the court found that allegation too vague to avoid dismissal:

> As to the language that appears in plaintiffs' first amended complaint, such language appeared as follows: "On information and belief, Mary DePaolo made substantially similar statements, regarding Moore having a shock collar on a dog's genitals to others in Moore's neighborhood at various times within one year of this suit being filed." As we have noted above, a pleading for defamation must be pled with sufficient precision and particularity. Plaintiffs fail to mention when these statements were made to neighbors, to which neighbors the statements were made, and what exactly was said to the neighbors. Accordingly, we are unpersuaded by

---

[4] The complaint also states that in August 2013, American Kitchen turned over documents to Soules and requested credit, but was denied. Complaint ¶ 1. This allegation is hard to square with the rest of the complaint. It seemingly concerns the incident described in paragraphs 22 through 28, which incident appears to have occurred around March 2011. Further, this allegation is inconsistent with paragraphs I.36, II.30, and III.30, which imply that all relevant events stopped in June 2013, when American Kitchen ceased doing business with John Soules altogether. John Soules pointed out these inconsistencies in its own motion to dismiss ([35] at 6 n.3), and American Kitchen did not respond or rely on any incident occurring in August 2013. In any event, the complaint's single reference to August 2013 does not mention Seafax, even implicitly—it suggests instead that John Soules did its own analysis based on American Kitchen's documents, and decided to deny credit. Complaint ¶ 1. That does not support a claim against Seafax.

> plaintiffs' argument that such vague language in their first amended complaint brought this claim within the statute of limitations.

*Id.* (internal citation omitted). *See also Johnson v. Schnuck Mkts., Inc.*, 495 Fed. Appx. 733, 736 (7th Cir. 2012) (even before *Twombly* and *Iqbal*, the Seventh Circuit "understood notice-pleading standards to require a plaintiff alleging defamation to identify the defendant's false statements").[5]

American Kitchen argues that the "continuing violation" rule applies, allowing it to tie Seafax's defamatory and disparaging statements made *outside* the limitations window to such statements made *within* the limitations period. [21] at 2. But because American Kitchen has not sufficiently alleged that Seafax made *any* defamatory statement within the limitations period, whether the "continuing violation" rule applies is irrelevant.[6]

American Kitchen's claims against Seafax are therefore barred by the statute of limitations.

---

[5] At an in-court status hearing on August 13, 2014, I told counsel for American Kitchen that the allegations in the complaint were "a little thin as to events that occurred after 2011." Counsel responded that "the denial of credit is ongoing." But as counsel acknowledged, John Soules, not Seafax, is the party that denied credit. A defamation claim accrues when the statement is published, not when the harm is complete. *Bryson*, 174 Ill.2d at 105; *Moore v. PETA*, 402 Ill.App.3d at 73.

[6] In any event, the rule does not apply: "Illinois does not apply the continuing violation rule to a series of discrete acts, each of which is independently actionable, even if those acts form an overall pattern of wrongdoing." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 435 (7th Cir. 2009) (internal quotation marks omitted); *id.* at 436 ("[T]he multiple reports Aurora and Ocwen made to the consumer reporting agencies constituted separate, discrete acts, even one of which would have given rise to a cause of action under Hukic's [defamation] theory. As such, the continuing violation rule does not apply.")

## B. Even if Not Time-barred, the Defamation Claim Against Seafax Fails Because American Kitchen Did Not Plead Special Damages.

"An Illinois defamation action may state a claim either for defamation *per se* (statements so harmful to reputation that damages are presumed) or defamation *per quod* (statements requiring extrinsic facts to show their defamatory meaning)." *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 924 (7th Cir. 2003). If the claim is *per quod*, the plaintiff must "itemize his losses or plead specific damages of actual financial injury." *Id.* at 927. Under federal pleading standards, "[i]f an item of special damage is claimed, it must be specifically stated." Fed. R. Civ. P. 9(g). *See Muzikowski*, 322 F.3d at 924 (Rule 9(g) applies to state-law defamation cases in federal court).

American Kitchen has not itemized its losses or pleaded specific damages. Instead, it argues that its claim is for defamation *per se*. [21] at 3. "Illinois law recognizes five categories of statements which are considered actionable *per se*: (1) those imputing the commission of a criminal offense; (2) those imputing infection with a loathsome communicable disease; (3) those imputing an inability to perform or want of integrity in the discharge of duties of office or employment; (4) those that prejudice a party, or impute lack of ability, in his or her trade, profession or business; and (5) those imputing adultery or fornication." *Moore v. PETA*, 402 Ill.App.3d at 68. Citing *Crinkley v. Dow Jones & Co.*, 67 Ill.App.3d 869 (1st Dist. 1978), American Kitchen argues that it is defamation *per se* to impugn the integrity or creditworthiness of a business. [21] at 3. But as Seafax pointed out in its reply ([23] at 5), *Crinkley* did not discuss defamation *per se* as opposed to *per quod*

8

(perhaps because the case did not include a defamation claim at all). False statements made in the credit reporting context do not amount to defamation *per se* under Illinois law. *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 438 (7th Cir. 2009) (citing *Whitby v. Assocs. Disc. Corp.*, 59 Ill.App.2d 337 (2d Dist. 1965)).

American Kitchen's claim is therefore one for defamation *per quod*; but it has not pleaded specific damages. It is deficient under Rule 9(g).

### C. Even if Not Time-barred, the Commercial Disparagement Claim Against Seafax Fails Because Seafax Did Not Demean the Quality of American Kitchen's Goods.

Seafax argues that it's not clear whether Illinois recognizes the tort of commercial disparagement. [14] at 12 (citing cases). Seafax also argues that American Kitchen's commercial disparagement claim is duplicative of its defamation claim. [14] at 12. Again citing *Crinkley*, American Kitchen responds that commercial disparagement is a recognized tort, and is distinct from defamation. [21] at 3. Even accepting that view, *Crinkley* dooms American Kitchen's disparagement claim by stating that such a claim requires demeaning the quality of the plaintiff's goods or services. 67 Ill.App.3d at 876 ("[D]efamation and commercial disparagement are separate and distinct torts: a defamation action lies when the integrity or credit of a business has been impugned, but if the quality of the goods or services are demeaned, then an action for commercial disparagement may be proper."). *See also Peaceable Planet, Inc. v. Ty, Inc.*, 362 F.3d 986, 993–94 (7th Cir.

9

2004) (allegations that defendant produced pirated goods do not state a claim for disparagement, because pirated goods can be high quality) (citing *Crinkley*).[7]

There are no allegations that Seafax demeaned the quality of American Kitchen's food products. The commercial disparagement claim therefore fails.

## IV. John Soules's Motion to Dismiss

### A. The Claim Against John Soules is Timely.

American Kitchen sued John Soules under the Equal Credit Opportunity Act (15 U.S.C. §§ 1691, *et seq.*). John Soules argues that American Kitchen's claim is time-barred, because such claims are subject to a two-year statute of limitations [35] at 5. But the Dodd-Frank Wall Street Reform and Consumer Protection Act increased the limitations period to five years, effective July 22, 2010. *See* Public Law 111-203 § 1085 (July 21, 2010) (increasing limitations period from two to five years); *id.* at § 4 (effective date is one day after enactment). *See also* 15 U.S.C. § 1691e(f) (current limitations period is five years). So any claims accruing on or after July 22, 2010, were timely brought when the complaint was filed three-and-a-half years later. And John Soules concedes that the complaint alleged discrete credit denials after July 22, 2010. [35] at 6 ("Plaintiff's claim accrued when John Soules declined to extend Plaintiff credit, which was in March 2011."). The claim against John Soules is therefore timely.

---

[7] Citing *Fedders Corp. v. Elite Classics*, 268 F.Supp.2d 1051 (S.D. Ill. 2003), American Kitchen appears to argue that it has stated a claim under the Illinois Uniform Deceptive Trade Practices Act. [21] at 3–4. But *Fedders* makes clear that "[s]o long as the statements at issue do not disparage the quality of the plaintiff's goods or services, no cause of action will lie under the [IUDTPA]." *Id.* at 1064 (internal quotation marks and alterations omitted).

## B. American Kitchen Has Not Plausibly Alleged that John Soules Denied Credit Because Hasan is Indian.

American Kitchen concludes that John Soules refused to sell on credit because Hasan is Indian, in violation of the Equal Credit Opportunity Act. Complaint ¶¶ 1, I.34–I.35.[8] To state a claim under the ECOA, American Kitchen must plausibly allege that its application for credit was treated less favorably because of Hasan's race. *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 538 (7th Cir. 2011).

American Kitchen alleges that John Soules knew that Hasan was of Indian descent, and refused to extend credit to American Kitchen. Notably, American Kitchen does not allege that the defendant denied credit because of plaintiff's race. The complaint's allegations are insufficient to state a claim for discrimination, especially given American Kitchen's repeated allegations that credit was refused based on the negative Seafax reports. *E.g.* Complaint ¶¶ 11, 15–16, 23, II.32, III.32. The complaint also alleges that John Soules extended credit to other customers with similar (or worse) creditworthiness. Complaint ¶¶ 1, I.33. It may be possible for a defendant to deny credit *both* because of creditworthiness *and* because of unlawful reasons. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1086–87 (7th Cir. 2008) (where plaintiff alleged a number of facts suggesting a non-sex-based reason for her

---

[8] In addition to asserting a claim under the Equal Credit Opportunity Act, American Kitchen refers to 42 U.S.C. § 1983 (in Count I's heading). John Soules is not a state actor, so no § 1983 claim lies. *See, e.g.*, *Turner v. Jackson Park Hosp.*, 264 Fed.Appx. 527, 529–30 (7th Cir. 2008) ("[Plaintiff] cannot state a claim under § 1983 because she has sued a private hospital and private individuals . . . .").

11

negative treatment, that alternative reason was "not mutually exclusive with sex discrimination," so she was given the chance to prove that sex was *also* a reason).

But American Kitchen's allegations fall short of suggesting that discrimination is a plausible explanation for John Soules's denials of credit. The "pleading rules do not tolerate factual inconsistencies" in a complaint. *Tamayo*, 526 F.3d at 1086. Thus, I accept as true that John Soules used Seafax to obtain credit information about American Kitchen, and that Seafax repeatedly reported negative credit information about American Kitchen to John Soules. I also accept that John Soules based its credit denials—at least in part—on that negative credit information. I further accept that the negative information in the Seafax reports was false. Thus, simply alleging that John Soules offers credit to others does not suggest that John Soules treated American Kitchen differently than it treats similarly situated companies with non-Indian owners.

Nowhere in the complaint does American Kitchen allege intentional discrimination; nor does it allege the disparate treatment of similarly situated individuals, such that one could reasonably infer that the credit denials were on account of race. It therefore does not state a claim under the Equal Credit Opportunity Act, and I grant John Soules's motion to dismiss.

## V. Conclusion

For the foregoing reasons, Seafax's motion to dismiss [12] and John Soules's motion to dismiss [33] are granted.

ENTER:

/s/ Manish S. Shah
Manish S. Shah
United States District Judge

Date: 9/29/14